UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                          :
CERTAIN UNDERWRITERS AT LLOYDS, LONDON,    :
INDIAN HARBOR INSURANCE COMPANY, QBE      :
SPECIALTY INSURANCE COMPANY, STEADFAST    :
INSURANCE COMPANY, GENERAL SECURITY       :
INDEMNITY COMPANY OF ARIZONA, UNITED      :
SPECIALTY INSURANCE COMPANY, LEXINGTON    :
INSURANCE COMPANY, HDI GLOBAL             : Civil Action No.: 1:23-CV-05096
SPECIALTY SE, OLD REPUBLIC UNION          :
INSURANCE COMPANY, GEOVERA SPECIALTY      :
INSURANCE COMPANY, and TRANSVERSE         :
SPECIALTY INSURANCE COMPANY               :
                                                          :
                    Petitioners,                          :
                                                          :
V.                                                        :
                                                          :
                                                          :
DUPUY STORAGE & FORWARDING, L.L.C.        :
                                                          :
                    Respondent,                           :
                                                          :
------------------------------------------------------------------------x

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR ORDER DESIGNATING AND APPOINTING AN UMPIRE IN AN ARBITRATION**

Pursuant to the applicable rules of this Court, Respondent, Dupuy Storage & Forwarding, L.L.C., ("Respondent"), submits this memorandum in opposition to the Petition for Order Designating and Appointing an Umpire in an Arbitration (the "Petition") filed by Petitioners Certain Underwriters at Lloyd's, London ("Underwriters"), Indian Harbor Insurance Company ("Indian Harbor"), QBE Specialty Insurance Company ("QBE"), Steadfast Insurance Company ("Steadfast"), General Security Indemnity Company of Arizona ("General Security"), United Specialty Insurance Company ("United Specialty"), Lexington Insurance Company ("Lexington"), HDI Global Insurance Specialty SE ("HDI"), Old Republic Union Insurance

Company ("Old Republic"), Geovera Specialty Insurance Company ("Geovera"), and Transverse Specialty Insurance Company ("Transverse") (collectively, "Petitioners").

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………….…………………………..1

ARGUMENT…………………………………………………………………4

I.      The policy requires the umpire to be "employed or engaged
        In a senior position in insurance underwriting or claims…………………..4

II.     The dispute pertains to estimating and scope assessment,
        not a legal or coverage determination…………………………..…………6

III.    There is no requirement in the policy that the umpire should
         be New York-based and have experience with New York law…..………7


CONCLUSION…………………………………………………….………..8

IV.     Robert Wittenberg, P.E. is the proposed umpire best
        qualified to handle the arbitration. …………………………….…………8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1701 Rest. on Second, Inc. v. Armato Properties, Inc.,*
  83 A.D.3d 526, 921 N.Y.S.2d 238 (2011)…………………………………………10

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 ……..……………………………………………………………………8

*Bhandara Family Living Tr. V. Underwriters at Lloyd's, London,*
  CV H-19-968, 2020 WL 1482559 (S.D. Tex. Feb. 20, 2020)……………………4,5

*Certain Underwriters at Lloyd's, London v. Falls of Inverrary
Condominiums, Inc,*
  2023 WL 2784513 (S.D.N.Y. Apr. 5, 2023)…………………………………………7,8

*Evanston Ins. Co.* v. *Gerling Global Reinsurance Corp*.,
  1990 U.S. Dist. 1990 WL 141442 (D. Ill. 1990)……..……………………..……4

*Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's London*,
  CV 20-102-JWD-SDJ, 2021 WL 359735 (M.D. La. Feb 2, 2021)…..…………..4

*Gottlieb v. Gottlieb*,
  138 A.D.3d 30, 25 N.Y.S.3d 90, (2016)…………………………………………10

*Karrena USA Inc. v. Cobra Thermosolar Plats, Inc.*,
  No. 221CV01291GMNEJY, 2022 WL 73518 (D. Nev. Jan. 7, 2022)……………8

*Mut. Marine Office, Inc. v. Ins. Corp. of Ireland,*
  2005 U.S. Dist. LEXIS 11584 (S.D.N.Y. June 13, 2005)………..…….…………4

*R/S Assoc. v. New York Job Dev. Auth*.,
  98 N.Y.2d 29, 744 N.Y.S.2d 358, 771 N.E.2d 240 [2002]………………………10

*RLI Ins. Co. v. Kansa Reinsurance Co.,*
  1991 WL 243425 (S.D.N.Y. Nov 14, 1991)…………………….,,,,……..…………4

## PRELIMINARY STATEMENT

The respondent is a limited liability company owning multiple properties in the State of Louisiana. A number of these properties were insured by Petitioners under an insurance policy issued by Petitioners (Ex. 1 – Insurance Policy). On August 29, 2021, Hurricane Ida struck the New Orleans area and damaged properties insured by the Petitioners (Ex. 2 – Complaint, ¶5-6). The Petitioners hired an adjusting company to inspect the properties and it was determined that coverage was afforded in the amount of $1,302,698,89 (Id. ¶8-10). Respondent contends that Petitioner failed to adequately adjust the loss and failed to reasonably estimate the cost to repair/replace the damages to the locations (Id. ¶13).

Despite Petitioners' assertion to the contrary, the matter does not contain a coverage dispute. Coverage was afforded by the Petitioners and there has been no full or partial disclaimer of coverage issued by Petitioners.

The policy contains an arbitration provision which states the following:

ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its information and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the matter hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agree to by any two members of the Arbitration Tribunal shall be binding. The aware of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

(Ex. 3 – Arbitration Provision)

Respondent sued Petitioners in Louisiana state court. The Petitioners removed and moved to compel arbitration, which was granted. The parties then appointed their arbitrators with Charles J. Sinclair, Esq serving for Petitioners and Joe Caldarera serving for Respondent.

The arbitration clause provides for selection of an Umpire only if the two arbitrators "fail to agree", and then only the "differences" are submitted to the umpire. The Respondents, pursuant to the terms of the arbitration clause, sought to have the appointed appraisers communicate and inspect the properties in an effort to resolve the issues prior to the need of selecting an umpire. Despite the requirement to attempt to mutually resolve the issues, Petitioners refused and sought immediate appointment of an umpire (Ex. 4 – Email Exchange).

Despite disagreeing with Petitioners' position to refuse to attempt have the arbitrators work on a mutual resolution, Respondent agreed to nominate umpire candidates. Petitioners proposed three former federal judges whereas Respondent proposed a judge, lawyer, and construction consultant. (Ex. 5 – Umpire Exchange)

The Arbitration Clause states that "the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in insurance underwriting or claims". None of the three judges that have been offered as an umpire by Petitioners have been employed or engaged in a senior position in insurance underwriting or claims. While Respondent concedes that two (2) of its proposed umpires likewise have never been employed or engaged in a senior position in insurance underwriting or claims, Respondent's remaining proposed umpire, Robert Frank Wittenberg, P.E., does have the requisite experience. Mr. Wittenberg's Curriculum Vitae reflects that he served as the Director of Surety Engineering for American International Group ("AIG") for over twenty (20) years. In that capacity, Mr. Wittenberg managed the resolution of construction matters and was responsible for reaching agreements on scope and budget. Mr. Wittenberg currently serves as a senior consultant for sureties where he is responsible for the resolution of claims including claims involving commercial buildings and roof replacements, much like what is at issue in this matter. (Ex. 6 – Wittenberg CV)

Petitioners now seek the appointment of one of its proposed umpires. Respondent contends that the umpire assigned to this matter should be versed in construction estimate and scope assessment. (Ex. 7 – Caldarera Email). On May 11, 2023, counsel for Petitioners in the underlying Louisiana matter sent Respondent's Louisiana counsel a breakdown of the "exact scope of the dispute remaining on the property" (Ex. 8 – Dispute Email) The email reflects that the remaining disputes consist of the "basis of Plaintiff's calculation" and the "amount in dispute". Out of the six

umpires proposed by the parties, only Mr. Wittenberg has experience in a senior insurance claims position and is best fitted to address the non-legal calculation disputes that remain in the underlying claim.

## ARGUMENT

### I.   THE POLICY REQUIRES  THE UMPIRE TO BE "EMPLOYED OR ENGAGED IN A SENIOR POSITION IN INSURANCE UNDERWRITING OR CLAIMS"

The arbitration provision states the following:

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed in a senior position in Insurance underwriting or claims.

(Ex. 3 – Arbitration Provision)

It is not for the parties or the courts to re-write the terms of the parties' contract. *RLI Ins. Co. v. Kansa Reinsurance Co.,* 1991 WL 243425, at *4 (S.D.N.Y. Nov 14, 1991) ("When faced with an arbitration clause, courts must attempt to implement that clause as written"); *Evanston Ins. Co.* v. *Gerling Global Reinsurance Corp*., 1990 U.S. Dist. 1990 WL 141442, at *6 (D. Ill. 1990) (Under the FAA a "court will not rewrite, but rather will enforce the agreement between the parties"). "Courts must focus on the agreed upon terms of the arbitration provision when confronted with an arbitration related dispute." *Mut. Marine Office, Inc. v. Ins. Corp. of Ireland,* 2005 U.S. Dist. LEXIS 11584, at *7 (S.D.N.Y. June 13, 2005).

Jurisdictions have found that "engaged in insurance claims or underwriting" includes those working for insurance companies, brokers, and those who represent insureds in making claims. See *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's London*, CV 20-102-JWD-SDJ, 2021 WL 359735, at *16 (M.D. La. Feb 2, 2021); *Bhandara Family Living Tr. V.*

*Underwriters at Lloyd's, London,* CV H-19-968, 2020 WL 1482559, at *3 (S.D. Tex. Feb. 20, 2020).

The policy language does not reflect that the Arbitration Tribunal shall consist of an attorney or retired judge. Petitioners drafted the insurance contract. Had they intended for an attorney or retired judge to be an umpire, the Petitioners could have easily drafted the policy to reflect that preference. The Court should be aware that there are contracts which contain arbitration language which specifically state that "the arbitrator shall be an attorney or retired judge. Petitioners have attached to this response an arbitration provision from a TTB contract which states the following:

> "The arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules."

> (Ex. 9 – TBB Arbitration Provision)

The existence of arbitration clauses that contain the above provision reflects that Petitioners were able to draft an arbitration agreement requiring the umpire to either be an attorney or retired judge. Instead, the Petitioners opted to draft the arbitration agreement to read that the umpire shall consist of persons employed in a senior position in Insurance underwriting or claims. The Insurance Policy was drafted solely by the Insurers. As such, any ambiguity or doubt inherent in the Policy should be construed against the Insurers.

All three (3) of the umpires proposed by Petitioners are retired federal judges. None of the Petitioner's proposed umpires have ever worked a day as a person employed in a senior underwriting or claims position. The only umpire proposed from either Petitioners or Respondent who has been employed in a senior underwriting or claims position is Mr. Robert Wittenberg, P.E. who served as the Director of Surety Engineering for American International Group ("AIG") for

over twenty (20) years. Based on the requirements of the policy, Mr. Wittenberg is best suited to serve as the umpire in this matter.

## II.   THE DISPUTE PERTAINS TO ESTIMATING AND SCOPE ASSESSMENT, NOT A LEGAL OR COVERAGE DETERMINATION

The underlying insurance claim was covered by the Petitioners and payments were made in excess of 1.3 million dollars. At no point in its Petition did Petitioners cite to or produce any evidence, such as a denial or partial denial letter, supporting that there are any legal or coverage determinations to be made as part of the arbitration. Petitioner's own Louisiana Counsel provided a specific breakdown of the remaining issues in a May 11, 2023 email (Ex. 8). A review of the email reflects that the issues in this matter, per Petitioner's own counsel, are the amounts in dispute and the basis for Plaintiff's calculations.

Respondents have included the Declaration of Colin R. Murphy, a building envelope consultant integrally involved in the underlying claim who has been retained over the years as an umpire to assess building envelope issues and disputes relating roofing and waterproofing matters. Mr. Murphy is of the opinion that the dispute pertains technical evaluation of the data generated in roof reports and an evaluation of the costs associated with the removal and replacement of the roof assemblies. Mr. Murphy further advises that it will be helpful for the umpire to have the skill set and experience to evaluate the report and test date as well as the costs associated with the very different scopes of repair. (Ex. 10 – Colin Murphy Declaration)

Based on the above, it is beyond argument that Mr. Wittenberg is the most qualified proposed umpire based on the disputes contained in this matter. The dispute calls for determinations as to estimating costs and determining whether commercial roofs can be repaired or replaced. Mr. Wittenberg, in his over forty-five (45) years of experience as a licensed engineer, over twenty (20) years as director for AIG, and nearly ten (10) years as a construction consultant

has assuredly inspected and estimate more damaged commercial roofs that all of Petitioner's umpires combined.

Based upon the contentions that will serve the basis of the arbitration, Mr. Wittenberg is the most qualified and preferred umpire.

### III.   THERE IS NO REQUIREMENT IN THE POLICY THAT THE UMPIRE SHOULD BE NEW-YORK BASED AND HAVE EXPERIENCE WITH NEW YORK LAW

Defendant argues that since the policy states the "seat of the arbitration" shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance, the umpire should therefore be New York-based and have experience with New York law. This argument would potentially hold water if the arbitration centered on a legal issue, but it doesn't.

There is nothing in the Petitioner's motion which contains any reference to any legal issues at issue in this claim. That is because none exist. The considerations that are left in the appraisal are those that are more tailored to a more boots-on-the ground adjuster background, such as damage assessment, estimation and method of repair.

Petitioners cite to the Southern District of New York ruling in Falls of Inverrary in an attempt to support its argument. However, a review of the briefings reflect a clear distinction between Falls of Inverrary and the facts of this arbitration.  Unlike this matter, where over $1.3 million dollars over property damage has been deemed covered, Falls of Inverrary involved a matter where the respondent made an insurance claim of $41,609,341.16 to which the Petitioner did not make a payment. A claim involving a carrier refusing to pay anything on a $41 million dollar insurance claim is going to be mostly a legal/coverage issue requiring interpreting insurance policy denials and case law. The facts of Falls of Inverrary support the need of an umpire with a

more legal background. However, as explained above, that is simply not the case here. Unlike <u>Falls of Inverrary</u>, the Petitioners in this matter have (1) afforded coverage, (2) made unconditional payments in excess of $1.3 million dollars, (3) have not issued a coverage position letter and (4) provided a breakdown of the remaining issues in dispute which include the amount in dispute and the basis for Respondent's damage calculation.

Accordingly, this Court should find that this dispute does not involve a coverage or legal dispute and, therefore, there should be no consideration as to whether a proposed umpire has experience with New York law.

<u>**CONCLUSION**</u>

**IV.    <u>ROBERT WITTENBERG, P.E. IS THE PROPOSED UMPIRE BEST QUALIFIED TO HANDLE THE ARBITRATION</u>**

Respondent, Dupuy, wants a fair and speedy resolution of its claim. So far, however, what it has received is delay and roadblocks. The latest is the selection of an umpire.

Since both sides fear the other's nominees, Respondent suggested the parties simply let the Court select whoever the Court feels would be best provided that person is not on either's list of nominees. That suggestion has been rejected by Petitioners.

Accordingly, in deciding who should serve as umpire, the Court must look to the arbitration agreement (which Petitioners drafted), and enforce it according to its terms.[1]

---

[1] Arbitration agreements are contracts; as such, the FAA requires arbitration agreements be enforced "according to their terms" using the guiding principles of contract law. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 at 339; *Karrena USA Inc. v. Cobra Thermosolar Plats, Inc.*, No. 221CV01291GMNEJY, 2022 WL 73518, at *2 (D. Nev. Jan. 7, 2022), report and recommendation adopted sub nom. *Karrena USA Inc. v. Cobra Thermosolar Plants, Inc.*, No. 221CV01291CDSEJY, 2022 WL 1185012 (D. Nev. Apr. 20, 2022)

The arbitration clause is clear –"Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims." (Ex. 3 – Arbitration Provision)

There is only one per person on either party's list that fits that requirement – Robert Wittenberg. He is a retired director of surety engineering for American International Group AIG), and served as AIG's lead engineer on all surety bond claim matters. The only criticisms Petitioners raise are (1) one of the - Lexington Insurance Company – is a member of AIG and thus Mr. Wittenberg is not neutral, (2) Mr. Wittenberg is not a lawyer and (3) he does not live in New York. These objections are specious.

First, if anyone should object to Mr. Wittenberg's possible partiality, it would be Dupuy (Respondent), who nominated him. Second, there is no requirement in the arbitration contract that the members of the arbitration panel live in New York or be a New York lawyer. Indeed, Petitioner's appointed arbitrator, Mr. Sinclair, lives in Connecticut, has his office there and has not practiced law since 2002.

Petitioners drafted the arbitration agreement. They unilaterally imposed it on Respondents as part of the insurance contract. They cannot now impose additional requirements that do not exist in the contract they drafted, and ignore the requirement that does. An arbitration agreement is a contract the Court must enforce according to the parties' agreed terms. As another court in the Southern District recently said:

> The court must appoint "an arbitrator in a way that [gives] effect to the parties' agreement." Stop & Shop Supermarket Co. LLC v. United Food & Com. Workers Union Loc. 342, AFL-CIO, CLC, 246 F. App'x 7, 11 (2d Cir. 2007). Arbitration agreements, like any other contract, must be enforced according to their terms. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Therefore, to discern the parties' intentions, courts look to the language of the arbitration agreement. Moss v. First Premier Bank, 835 F.3d 260, 264 (2d Cir. 2016).

9

"[C]ourts should not redesign the bargain reached by the parties merely because in retrospect the provisions might be viewed as improvident or one-sided." *Gottlieb v. Gottlieb*, 138 A.D.3d 30, 36–37, 25 N.Y.S.3d 90, 96 (2016). Under the "clear language" rule of contract interpretation, when there is no ambiguity, we look only to the language of the agreement. *1701 Rest. on Second, Inc. v. Armato Properties, Inc.*, 83 A.D.3d 526, 526, 921 N.Y.S.2d 238, 239 (2011)*; R/S Assoc. v. New York Job Dev. Auth*., 98 N.Y.2d 29, 33, 744 N.Y.S.2d 358, 771 N.E.2d 240 [2002].

Petitioners also argue that because New York law will apply, the umpire be a retired judge versed in New York law. That argument, however, overlooks that this case turns on factual issues, not legal ones.

Petitioners unconditionally tendered Dupuy over $1M without citing any coverage issues. Petitioners have not issued a coverage position letter disclaiming further liability based on coverage issues. Their pleadings in this Court do not identify a coverage or issue of law. On May 11, 2023, Petitioners own counsel in the underlying Louisiana matter sent Respondent's Louisiana counsel a breakdown of the "exact scope of the dispute remaining on the property" (Ex. 8 – Dispute Email). That email reflects the remaining disputes consist of the "basis of Plaintiff's calculation" and the "amount in dispute".

On the other hand, Dupuy has presented the declaration of Colin Murphy, its expert, which explains that the issues in dispute are a technical evaluation of the data generated in the reports and an evaluation of the costs associated with the removal and replacement of the roof assemblies, and it will be helpful for the arbitrator or Umpire to have the skill sets and experience to evaluate the report and test data as well as the costs associated with the very different Scopes of Repair.

Out of the six umpires proposed by the parties, only Mr. Wittenberg has experience in a senior insurance claims position and is best fitted to address the non-legal calculation disputes that remain in the underlying claim. He is the only one with a background and/or work experience in design, construction and/or estimating of damaged structures. Alternatively, if this Court does not select Mr. Wittenberg, it is requested that this Court select an independent umpire, not proposed by either party, who possesses technical background and has been employed or engaged in a senior position in Insurance underwriting or claims.

Dated: July 24, 2023                                        Respectfully submitted,

By: */s/ William F. Merlin, Jr. Esq..*
    William F. Merlin, Jr. Esq.
    Merlin Law Group
    777 S. Harbour Island Blvd.
    Suite 950
    Tampa, FL 33602
    Telephone: (813) 229-1000
    Fascimile: (813) 229-3692

    Attorneys for Respondent
    Dupuy Storage & Forwarding L.L.C.